FILED
2010 MAY 5 A 11:43
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| TAMMY L. STRAUGHN | : | Case No. 09-26613-TPA |
| *Debtor* | : | Chapter 11 |
| | : | |
| TAMMY L. STRAUGHN, | : | |
| *Movant* | : | Related to Document No. 12 |
| | : | |
| v. | : | |
| | : | |
| NO RESPONDENT | : | |
| ------------------------------------------------ | : | |
| IN RE: | : | |
| | : | |
| JT TRUCKING, INC. | : | Case No. 09-24369 |
| *Debtor* | : | Chapter 11 |
| | : | |
| JT TRUCKING, INC., | : | |
| *Movant* | : | Related to Document No. 55 |
| | : | |
| v. | : | |
| | : | |
| NO RESPONDENT | : | |

*Appearances:*  Donald R. Calaiaro, Esq., for the Debtors
Joseph M. Fornari, Jr., Esq. for the United States Trustee

**MEMORANDUM OPINION**

Both Debtors in these related cases have filed similar Motions to Employ Counsel ("Motions to Employ") that seek to employ Donald R. Calaiaro as their attorney ("Proposed Counsel"). The individual Debtor, Tammy L. Straughn ("Straughn") is the majority shareholder and president of the corporate Debtor, J.T. Trucking, Inc. ("J.T.") and, as discussed below, there are

certain other financial ties that exist between the Debtors. The United States Trustee ("UST") filed Responses in both cases opposing the dual retention of Proposed Counsel by both Debtors on the grounds of actual and/or potential conflict of interests.[1] An evidentiary hearing was held on March 1, 2010, at which time Straughn testified. For the reasons that follow, the Court finds that Proposed Counsel may not represent both Debtors.

### *Bankruptcy Cases*

On May 8, 2009, about one month prior to the filing of the current case, the Court dismissed a prior Chapter 11 case filed by J.T. at Case No. 07-22204 due to its failure to make the payments required under a confirmed Plan of Reorganization and the Debtor otherwise being unable to satisfy the requirements for obtaining a Final Decree. Proposed Counsel represented J.T. in the prior case. The voluntary petition in the present case was filed on June 10, 2009.

On September 9, 2009, Straughn filed her voluntary *Petition* under Chapter 11 of the Bankruptcy Code. Like J.T., Straughn had previously filed a bankruptcy at Case No. 08-28090. Her prior case was filed on December 3, 2008, under Chapter 7 of the *Bankruptcy Code* by an attorney other than Proposed Counsel. The Debtor failed to appear at the first scheduled §341 Meeting which was then rescheduled. Proposed Counsel entered an appearance in the case just prior to the rescheduled meeting. The *§341 Meeting* was held on April 1, 2008, and was adjourned to April 29,

---

[1] The Court's jurisdiction to hear and determine the *Motions to Employ* arises under *28 U.S.C. §§ 1334 and 157*. This is a core matter pursuant to *28 U.S.C. § 157(b)(2)(A)*. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to *Fed.R.Bankr.P. 7052* which is made applicable to contested matters by *Fed.R.Bankr.P. 9014*.

2008 as "[n]ewly retained counsel requires additional time to make required amendments." One day prior to the rescheduled *§341 Meeting*, the Debtor, through Proposed Counsel, filed a motion to dismiss the case, which was granted by *Order* dated May 29, 2009.

### *Motions to Employ Counsel*

On September 22, 2009, Proposed Counsel's **Motion to Employ** was filed in Straughn which disclosed Proposed Counsel's simultaneous representations of J.T. ("Straughn Motion to Employ"). On October 22, 2009, the first hearing to consider the *Straughn Motion to Employ* was held and by *Order* dated October 29, 2009, the Court expressed its concern in regard to Proposed Counsel's representation of both of the related debtors, Straughn and J.T. Straughn was directed to file an Affidavit on or before November 12, 2009 addressing seven specific issues which were set forth in the *Order*. The UST was also directed to file a response and state her position regarding the dual representation.

Rather than Straughn filing an Affidavit as directed, Proposed Counsel filed a *Declaration Under Bankruptcy Rule 2014(a) in Support of Application to Employ Counsel* ("Declaration"). The *Declaration* began by setting forth certain factual details regarding the relationship between J.T. and Straughn, and ended with Proposed Counsel's conclusion that no actual conflict of interest exists in his representation of both Debtors. Proposed Counsel claimed that under "the unique circumstances present here" he should be permitted to represent both Debtors until such time as a conflict actually arose.

Thereafter, the UST timely filed her *Response*. On November 23, 2009, a **Corrected Response** was filed by the UST ("Response"). In her *Response*, the UST alleged that Proposed Counsel and Straughn's *Declaration* was non-responsive to the Court's Order in that it failed to provide sufficient information to enable a determination of whether actual or potential conflicts of interest existed that would disqualify Proposed Counsel. For these and other reasons, the UST requested that the *Motion to Employ* be denied.

On December 1, 2009, similar to the *Straughn Motion to Employ*, the **Motion to Employ** currently under review in the J.T. case was filed by the Debtor ("J.T. Motion to Employ").[2] On January 4, 2010, the UST filed her **Response** to the *J.T. Motion to Employ* and, for similar reasons, requested that it be denied.

Following a continuance at the request of Proposed Counsel, an evidentiary hearing and argument were rescheduled for March 1, 2010, regarding both *Motions to Employ*. On the eve of the evidentiary hearing, Proposed Counsel filed a *Supplemental Declaration Under Bankruptcy Rule 2014(a) In Support of Application to Employ Counsel in Straughn* ("Supplemental Declaration.") In the *Supplemental Declaration,* Proposed Counsel attempted to respond to the seven specifically enumerated questions raised by the Court in its October 27, 2009 *Order* and directed to the heart of the conflict issue. Proposed Counsel acknowledged several areas of potential conflict but maintained that since no actual conflicts existed, "chosen counsel" should be permitted to represent both Debtors until an actual conflict arose.

---

[2] As noted, the present case was originally filed by J.T. on June 10, 2009. No accompanying *Motion to Employ* was filed until December 1, 2009.

4

## *FACTS*

The facts necessary for a determination of the *Motions to Employ* can be gleaned from the petitions and other filings, and the testimony of Straughn at the evidentiary hearing.[3] The relevant facts appear to be undisputed and include the following:

- Straughn is an 80% shareholder of J.T. and serves as its President and Secretary.

- Straughn owns 800 shares of J.T. stock which she values at $1.

- Straughn is also a creditor of J.T., showing an account receivable due from J.T. in the amount of $7,700.

- Straughn is a codebtor or guarantor on the majority of J.T.'s obligations.

- The Straughn and J.T. petitions reflect that both share a number of unsecured creditors (Cascade Express, Automated Fueling, Keystone Spring and One-Call Rentals) and secured creditors (First National Bank ("FNB") and Triangle Gasoline).

- There are 2nd, 3rd, and 4th mortgages against Straughn's residence for obligations incurred by J.T., with FNB holding the 2nd and 3rd, and Triangle Gasoline the 4th.

- Straughn has been assessed a civil penalty by the IRS and is personally liable for the trust fund portion of J.T.'s tax obligations which include a significant priority claim.

---

[3] The court may take judicial notice of its docket. *Fed. R. Evid. 201*, incorporated in these proceedings by *Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); *Levine v. Egidi,* 1993 WL 69146 at *2 (N.D. Ill. March 8, 1993); *In re Paolino,* 1991 WL 284107 at *12 n. 19 (Bankr. E.D. Pa. Jan. 11, 1991); *see generally In re Indian Palms Assoc., Ltd.,* 61 F.3d 197 (3d Cir. 1995). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, e.g. *In re Aughenbaugh*, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ...[and] so long as it is not unfair to a party to do so and does not undermine the trial court's fact-finding authority." *In re Indian Palms Assoc.,* 61 F.3d at 205 *citing Fed. R. Evid. 201(f)* advisory committee note (1972 proposed rules)); *See also: In re Berg*, 356 B.R. 378 n. 1 (Bankr E.D. Pa. 2006).

J.T. had previously operated as a Limited Liability Partnership and it applied for a loan through the Small Business Administration ("SBA"). At the request of the SBA and in order to obtain the SBA loan, J.T. was incorporated. The loans that are listed as obligations to FNB in the Straughn and the J.T. cases, respectively, represent the SBA loans.

From the date of J.T.'s incorporation, Straughn has been an 80% shareholder and has served as its President and Secretary. Her status remained unchanged as of the filing of the present bankruptcy cases. Straughn prepared a business plan for J.T. in 2007. After J.T.'s first bankruptcy filing, despite maintaining her official titles, Straughn's involvement in J.T. was reduced to bookkeeping and the preparation of reports. Subsequent to the present bankruptcy filings, John Toomey has managed J.T. on a day-to-day basis. Toomey is a 15% shareholder of J.T. and Straughn's "significant other." Under the proposed *Plan* in the J.T. case, Straughn is to surrender all of her stock in the corporation and relinquish her positions as corporate officer. Straughn made the decision to surrender the stock and determined that $1 was an appropriate value of the stock based on the value that she listed on the documents she submitted to the PA Department of State in connection with the incorporation.

At no time during J.T.'s existence has Straughn ever drawn a salary or other compensation from it. In the two years prior to the filing of the present case by J.T., no assets have been transferred and no payments have been made to Straughn. During that time, no monies or other assets have been transferred to J.T. from Straughn.

The cause for Straughn's personal bankruptcy filing was directly related to the debt incurred by J.T. for which she is currently liable. Straughn is liable as joint obligor or guarantor on

over 50% of J.T.'s liabilities. The IRS has even assessed her a civil penalty for taxes that J.T. has failed to pay. According to the *Plan* it proposed, J.T. will pay, in full, the tax obligations on which Straughn is a co-debtor.

Straughn asserts that there is no equity in her residence. Straughn values her residence at $128,000 [4] and identifies Chase Mortgage, which is alleged to be owed $139,000, as holder of the 1st Mortgage against her residence. As a result, she intends to "strip off" and reduce the 2nd, 3rd, and 4th mortgages against the property to unsecured debt for the FNB and Triangle Gasoline obligations incurred by J.T.

There is no dispute that Straughn is a creditor of J.T. and its bankruptcy estate. J.T.'s obligation to Straughn arises from a transaction involving a trailer which Straughn purchased and then leased to J.T. for use in the business. J.T. failed to make the lease payments and is obligated to Straughn in the amount of $7,700. Straughn believes that the obligation to her is uncollectible and that payment to her, in any amount, is not expected.[5]

Straughn agreed to pay Proposed Counsel a $6,500 retainer for her case. Of that amount, Straughn has paid $3,000, but the balance remains unpaid pending the approval of Proposed Counsel's *Motion to Employ*. At the March 1st evidentiary hearing, Straughn made clear that she agreed to waive any potential conflicts of interest. She also claimed to be unaware of any actual

---

[4] The Court notes that in the prior case, Case No. 08-28090, Straughn indicated on Schedule "A" that the value of her residence was $175,000.

[5] There was initially some dispute as to whether the trailer should be part of the Straughn bankruptcy estate or the J.T. bankruptcy estate. However, the trailer has been surrendered to Commerce Bank, the secured creditor which financed its purchase, so that issue is moot.

conflicts of interest between and among herself, J.T. and Proposed Counsel.[6] Straughn claimed that Toomey, on behalf of J.T., had also agreed to waive any conflicts but other than her statement, nothing is documented on the record regarding Toomey's intent.

Straughn testified that she received "significant" income from other employment and that if the Plan is confirmed she acknowledged that she is obligated to pay her disposable income for a minimum period of five years to her unsecured creditors. She testified that her Chapter 11 case is not in anyway dependent upon J.T. obtaining confirmation, and likewise, J.T. is not dependent on Straughn.

### ***DISCUSSION***

The *Bankruptcy Code* allows the trustee of a bankruptcy estate to employ attorneys to assist her in her duties. *11 U.S.C. § 327(a).* The power of a debtor-in-possession to employ professionals is the same as a trustee. *11 U.S.C. § 1107(a); United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994). The professional to be retained by the debtor in a bankruptcy case must not hold, or represent, an interest adverse to the estate, and, must be disinterested. *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 475 (3d Cir. 1998); *11 U.S.C. § 327(a)*.

*Section 327(a)* of the *Bankruptcy Code* provides:

> "[T]he trustee, with the Court's approval, may employ one or more attorneys....that do not hold or represent an interest adverse to the estate,

---

[6] Straughn testified that she was able to render such an opinion in large part due to her 2 years of study in law school.

> and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

*11 U.S.C. § 327(a).*

A disinterested person is one that "does not have an interest materially adverse to the interest of the estate....by reason of any direct or indirect relationship to, connection with, or interest in the debtor, or for any other reason." *11 U.S.C. § 101(14)(c).*

Recently, the Honorable Jeffery A. Deller of this Court, identified the operative standards to follow when evaluating conflict issues such as those presented in these cases. Judge Deller recognized that as a general proposition, "the dual representation of a closely held corporation and its principal has been disfavored by various bankruptcy courts." *In re Cunzolo,* 423 B.R. 735, 737 (Bankr. W.D. Pa. 2010) *citing In re BH & P, Inc.,* 949 F.2d 1300 (3d Cir. 1991); *In re Bohack Corp.,* 607 F.2d 258 (2d Cir. 1979); *In re Frascella Enters., Inc.*, 2006 WL 1530256 (Bankr. E.D. Pa. Apr. 12, 2006). Furthermore, an application to employ counsel requires careful and thoughtful consideration since the denial of such an application deprives the debtor of her choice of counsel, a point made clear by Proposed Counsel at the March 1st hearing and in his filings. *Cunzolo*, 423 B.R. at 740; *In re Raymond Prof'l Group, Inc.*, 421 B.R. 891, 901 (Bankr. N. D. Ill. 2009). Incorrectly granting an application without the appropriate review, however, may allow a professional to represent a conflicting interest resulting in prejudice to the creditors of the estate outweighing any choice of counsel considerations of the Debtor. *Id.*

In performing the "appropriate" review, some courts have applied a *per se* prohibition against the concurrent representation of both a major shareholder and the related corporate estate.

*In re Wynne Residential Asset Mgmt., L.L.C.,* 2009 WL 5169371 at *4 (Bankr. W.D. N.C. Dec. 18, 2009); *In re Innomed Labs, L.L.C.,* 2008 WL 276490 at *7 (S.D. N.Y. 2008) *citing In re Kendavis Indus. Int'l Inc.,* 91 B.R. 742, 754 (Bankr. N.D. Tex. 1988). Other courts have adopted a rule that it is presumptively improper to appoint a single professional in related cases where there exists a potential conflict of interest. *In re Parkway Calabasas, Ltd.*, 89 B.R. 832, 835-37 (Bankr. C.D. Cal. 1982); *In re BH & P, Inc.*, 103 B.R. 556, 570-72 (Bankr. D.N.J. 1989), *remanded on other grounds*, 119 B.R. 35 (D.N.J. 1990)*, aff'd*, 949 F.2d 1300 (3d Cir. 1991).

The Third Circuit has rejected the "presumptive rule" and in its stead adopted a "case-specific" conflicts-of-interest analysis that is largely "committed" to the sound discretion of the bankruptcy court. *In re BH & P, Inc.,* 949 F.2d 1300, 1310-14 (3d Cir. 1991).

In *BH & P*, the court affirmed the bankruptcy court's articulation of the applicable standard governing conflict of interest issues as they relate to professionals in the bankruptcy context. In that case, the bankruptcy court recognized that disapproval of the professional's employment is mandatory where an actual conflict exists. When a potential conflict arises, the court is required to exercise its discretion in approving or disapproving employment with a presumption against allowing the employment unless certain exceptions apply. In *BH & P*, the Third Circuit cited with approval the bankruptcy court's finding:

> "[t]he court should generally disapprove employment of a professional with a potential conflict, with certain possible exceptions. First of all, ... there may occasionally be large cases where every competent professional in a particular field is already employed by a creditor or a party in interest....

> The other exception is where the possibility that the potential conflict will become actual is remote, and the reasons for employing the professional in question are particularly compelling.
>
> This court will not attempt here to define the parameters of the exception, which necessarily will depend upon the facts of a particular case. I will, however, note that even in such situations, employment of a professional with a potential conflict is disfavored.

*BH &P*, 949 F.2d at 1316 quoting *BH & P*, 103 B.R. at 564.

"The term 'actual conflict of interest' is not defined in the *Bankruptcy Code* but has been given meaning largely through a case-by-case evaluation of particular situations arising in the bankruptcy context." *BH & P, Inc.,* 949 F.2d at 1315. Therefore, while exercising its discretion in determining the existence of an actual conflict, the bankruptcy court is required to evaluate each case on its facts, taking all circumstances into account. This approach was reaffirmed in *In re Marvel Entm't Group, Inc.,* where the court recognized the application of a *per se* rule of disqualification when confronted with an actual conflict:

> We previously interpreted the standards applicable to employment of trustee's counsel under §§ 327(a) and 101(14)(E) in *BH & P*, 949 F.2d 1300. Insofar as both parties have somewhat misread *BH & P*, and urge upon us such conflicting interpretations of it, we have studied our previous decision in great detail and today expressly reiterate its holding: (1) Section 327(a), as well as § 327(c), *imposes a per se disqualification* as trustee's counsel on any attorney who has an actual conflict of interest; (2) the district court may within its discretion-pursuant to § 327(a) and consistent with § 327(c)-disqualify an attorney who has a potential conflict of interest and (3) the district court may not disqualify an attorney on the appearance of conflict alone.

*Id.* 140 F.3d at 476 (emphasis added). *See also In re Congoleum Corp.*, 426 F.3d 675, 692 (3d Cir. 2005) (reiterating *BHP* and *Marvel* holdings).

The record in the subject cases readily gives rise to a host of scenarios to review for purposes of determining the existence of either actual or potential conflicts of interest. Perhaps most telling is that Straughn is a creditor of J.T. "Where one estate is indebted to the other, there exist two groups of creditors which have conflicting claims and payment for one group is necessarily at the expense of the other." *In re Star Broad.,* 81 B.R. 835, 841 (Bankr. D. N.J. 1988) *quoting In re Huffman,* 53 B.R. 564, 565-66 (Bankr. W.D. Ark. 1985). If Proposed Counsel were allowed to simultaneously represent both estates, he would have to function as a proponent of the *Plan* in the J.T. case and simultaneously pass on the merits of the *Plan*, and the concomitant repayment possibilities, on behalf of the estate in the Straughn case. "[I]f the same attorney represents both estates, he is faced with the dilemma of advising his clients to choose between conflicting duties which are as president of the corporation and as a fiduciary for the individual estate." *Star, supra; see also In re Jeep Eagle 17, Inc.*, 2009 WL 2132428 at 44 (Bankr. D. N.J., July 13, 2009).

Straughn testified that she does not intend to collect the receivable due her from J.T. and will waive any claims that she has against the corporation. That, however, does not resolve the actual conflict. Her agreement to waive the claim is a detriment to her personal creditors. If Straughn waives her claim, the creditors of the J.T. estate would benefit while the creditors of her individual estate would suffer in the reverse degree. Proposed Counsel would be faced with the dilemma of advising Straughn to choose between conflicting duties which exist in her capacity as president of the corporation in the corporate bankruptcy and as a fiduciary for the individual estate. *Id.* As Judge Deller recognized in *Cunzolo*:

> An attorney for the debtor-in-possession has a fiduciary duty "not only to the debtor, but has a fiduciary obligation to act in the best interest of the

>  entire estate, including creditors." ...  In this regard, the debtor-in-possession and its counsel have a duty to maximize value for the estate as a whole....  This includes insuring the protection of creditors rights....

*Cunzolo*, 423 B.R. at 739 n.5 (citations omitted).

Therefore, the Court finds in this case that because one estate is indebted to the other, there is an actual conflict of interest which prohibits the dual representation of both Debtors by Proposed Counsel.

This conflict situation is exacerbated since Straughn is also the majority shareholder of J.T. and a co-obligor and guarantor for a large percentage of J.T.'s debt, including unpaid priority tax obligations.  The resulting conflict for an attorney representing both a corporation and its majority shareholder, who controls the corporation, is the risk that the shareholder in control will instruct counsel in ways that favor her interest as guarantor at the expense of her fiduciary duty to the corporation.[7]  *In re Plaza Hotel Corp.*, 111 B.R. 882, 890 (Bankr. E.D. Cal. 1990) (interests of owner guarantors and interests of debtor corporation are not identical and there is a persistent risk for an attorney who represents both a corporation and the individuals who control it that the attorney will be instructed to act in ways that favor their interests *qua* guarantors at the expense of their interests *qua* owners).

---

[7] As to the inherent conflicts an attorney can face in simultaneously representing a corporation and its principal/majority shareholder in her individual capacity, see, for example, *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1229 (3d Cir. 1995) (once attorney abandoned fiduciary obligations as counsel to debtor corporation and undertook representation of individual shareholder he became hostile to debtor corporation and its creditors); *In re Angelika Films 57th, Inc.*, 246 B.R. 176, 180 (S.D N.Y. 2000) (commenting on the difficulties inherent in a situation where the principal of a debtor and the debtor are represented by the same counsel).

Beyond the actual conflicts present here, sufficient additional "potential" conflicts exist that would indicate disqualification is warranted. Straughn values her residence at $128,000, an amount which is less than the $139,000 balance on her first mortgage. In her prior bankruptcy, Straughn valued her residence at $175,000. By reducing the value to an amount less than is owed on the first mortgage, Straughn intends to "strip off" the 2nd, 3rd, and 4th mortgages, eliminating Straughn's secured guaranty obligation to creditors of J.T. Since Straughn is a guarantor and coobligor on J.T.'s obligations, advising the individual debtor whether or not to take this course creates a potential conflict for Proposed Counsel who has a fiduciary duty to the creditors of both bankruptcy estates. *In re Plaza Hotel Corp.*, 111 B.R. at 890.

Similarly, that Straughn intends to surrender her stock to J.T. without compensation creates another situation which may ultimately lead to an actual conflict, not merely a potential one. Straughn claims that her stock in J.T. has no value because she listed the stock with a par value of $1 on J.T.'s incorporation papers. The stated par value has nothing to do with actual value. It may be correct that the stock is without value, or it may be that if and when J.T. reorganizes, the stock will have value. Straughn will need legal advice from Proposed Counsel on this subject and, like the issue concerning the value of her residence, the determination will have an effect on the creditors of both bankruptcy estates the result of which may impact upon Proposed Counsel's fiduciary duty to the creditors of both estates.

The Court recognizes that Debtor's choice of counsel is entitled to significant deference. *In re Shore*, 2004 WL 2357992 at *4 (Bankr. D. Kan. 2004) (and cases cited therein). However, that choice of counsel must be balanced against the mandate in this Circuit that dual

representation, under facts such as those presented here, is disfavored. This is not a case where every competent professional in the bankruptcy field is already employed by a creditor or a party in interest. Nor is it a case where the likelihood that potential conflicts will eventually become actual, is remote. In balancing Debtor's choice of counsel and judicial efficiency against the need to preserve the public's confidence in the bankruptcy system, the Court cannot ignore the conflicts that present themselves under these facts.

Based on the numerous, apparent conflicts in these cases, even if the Court were to give the Debtors and Proposed Counsel the benefit of every doubt, and find that all of the identified conflicts rose only to the level of potential conflicts rather than actual, the cumulative effect of the "potential" conflicts of interest are of such significance and scope, at the very least, the individual debtor, Straughn, and the corporate debtor, J.T., must each retain separate counsel. Here, the efficiency and economy that may favor multiple representation must yield to the competing concerns affecting fairness to all parties involved and in protecting the integrity of the bankruptcy process.[8]

As is apparent from the prior discussion, in arriving at this decision, the Court has also considered developments having taken place in the subject cases following their respective filings. This includes that as part of J.T.'s proposed Plan, Straughn is to surrender her stock and relinquish her corporate office, and, that Straughn does not intend to collect the receivable due her estate from J.T. However, the events that are contemplated to occur upon confirmation of a plan are speculative at best given that confirmation of a plan is not a certainty. *In re Jeep Eagle 17, Inc.,*

---

[8] Straughn's failure to file an Affidavit to address the Court's specific concerns as directed by the October 27, 2009 *Order* constitutes a basis for disqualification in and of itself. *In re Cunzolo,* 423 B.R. at 742.

2009 WL 2132428 at *4 (Bankr. D. N.J. July 13, 2009) *citing Star Broad.,* 81 B.R. at 840. Regardless of the possibility of certain events coming to fruition, occurrence of those events does not alleviate the fact that Proposed Counsel was not disinterested and was subject to an adverse interest from the outset of the cases. *In re Cunzolo,* 423 B.R. at 740.

That both Straughn and J.T. have each agreed to waive any conflict has similarly been given due consideration by the Court. Consent by a Chapter 11 debtor to waive conflicts is insufficient to cure any actual or potential conflicts because the ultimate parties in interest are the bankruptcy estate's creditors. *In re Jeep Eagle 17*, 2009 WL 2132428 at *5.

The Court recognizes that Proposed Counsel has made significant progress in these cases. "Accomplishments, however, cannot wash a professional clean of any adverse interest or make an otherwise interested person disinterested." *In re 7677 East Berry Ave. Assocs., L.P.,* 419 B.R. 833, 840 (Bankr. D. Colo. 2009). "[T]hese subsequent developments do not alleviate the fact that when this case was commenced ... counsel was not a disinterested person under the Bankruptcy Code." *Cunzolo* at 740. "[P]roposed counsel assumed the risk from day one that the retention application could be denied." *Id.*

As a practical matter, given the nature of the relationship between a sole shareholder and the related corporation, it is difficult to imagine a situation where both parties in separate Chapter 11 cases could be represented by a single attorney.[9] In most cases of this type, similar to the

---

[9] That in past situations of this type, such dual representation may have been permitted to occur in this Court without strict scrutiny, is not a license for the future. By Opinions such as this one, and *Cunzolo*, the Bar of this Court should be put on notice that, going forward, the Court will be more vigilant concerning the review of dual representation issues.

present situation, conflicts abound over issues such as the amount of the shareholder's salary, the appropriate amount of rental payments between the parties, joint liabilities or liabilities for which the shareholder serves as coobligor or guarantor, a debtor-creditor relationship between the parties, or situations in which transfers between the parties have occurred prior to the filing date.  These types of relationships require debtor's counsel to analyze and ponder the effect of these actual or potential conflict situations in the bankruptcy context before the case is even filed.  Where circumstances are presented that interfere with counsel's exercise of independent judgment on behalf of client and creditors, the wise choice is not to assume a dual representation relationship.

## **CONCLUSION**

In deciding this matter, the Court is sensitive to the concept that the extent of the potential conflict when balanced against the right to choose counsel and the cost of paying for independent counsel, in some cases, may militate against separate representation.  *Cunzollo*, 423 B.R. 740.  But that is a consideration best reserved as an ending point in the review process. Resolution of the dual representation issue begins with an examination of the extent and nature of existing conflicts, actual or potential.  Where the conflict issue outweighs the choice and cost issues – which will always be the case where there is an actual conflict – separate representation is required. Under these facts, clearly the exercise of Proposed Counsel's independent judgement as to matters affecting each estate is necessarily compromised. Under these facts, Proposed Counsel, is not a disinterested person but holds an interest adverse to the bankruptcy estate.  As such, the Court must sustain the objections of the UST and at this time exercise its discretion by denying each *Motion to Employ*.  *Cunzolo* at 739-40.

Proposed Counsel, in consultation with the Debtors, will be given 20 days from the date of the *Order* issued pursuant to this *Memorandum Opinion* to determine whether he will represent Straughn or represent J.T.  The Court will then be in a position to entertain an amended motion to employ, *nunc pro tunc*.  The other debtor-in-possession will thereafter immediately retain substitute counsel.  *See In re Jeep Eagle 17,* 2009 WL 2132428 at *6; *In re Star Broad., Inc.,* 81 B.R. at 844, citing, *Hoffman,* 53 B.R. at 566.[10]  All proceedings in both cases are stayed pending resolution of the representation issue.

An appropriate Order will be entered

Dated: May 5, 2010

_____
Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
    Donald R. Calaiaro, Esq.
    Joseph M. Fornari, Esq.

---

[10] It would appear at this stage of the case, under a strict application of the applicable standard, Proposed Counsel should be prohibited from representing both Debtors since, if an actual conflict existed from the beginning of the representation, that conflict seemingly would create irreconcilable differences with Counsel's judgment for each bankruptcy estate.  However, under the facts of these cases the Court will adopt the same measure of relief afforded in *In re Jeep, supra,* and requested by the UST, that is, allow Proposed Counsel to represent one of the Debtors in the pending cases.  This approach may not be available in future cases where the dual representation issue arises.